Next case we're going to hear is Whala v. PNC Bank and Mr. McLaughlin, whenever you're ready to hear from you. May it please the court, I'm Henry McLaughlin, I represent the appellants and I request to reserve seven minutes of my time. This case involves a, it's a contract claim based on a foreclosure. The, Mr. Whala, who's one of the appellants, signed a note. Procedural matter, did your clients object to the foreclosure? Well, I didn't have to get reported to the court, the sale, and get it approved by the court. This was, this was a non-judicial foreclosure. There was no court proceeding for the foreclosure. Under Virginia law, You don't have to report the sale, you can just conduct it yourself and there's no court involvement at all? Well, after a sale, there is an ex parte procedure for a report to the Commissioner of Accounts, which is an official. Can a debtor object to the foreclosure in that process? A debtor can object, but under Virginia law, it's too late. An investor bought it. And so, Why is it too late? Every place I know, if you object to a foreclosure, and I think you have to have some means of access, although the Supreme Court requires a certain amount of due process when you follow through on that. But, if they object, then the foreclosure is in limbo until there's a resolution of the objection. Your Honor, I'll submit it, that is not Virginia law. In fact, Virginia law is quite to the contrary. How does a debtor object to foreclosure? What if it's just a mistake, and the debtor objects to it? Are you asking before or after? Well, there's always, the first steps of foreclosure are always self-help, because that's the authorization in the document. But usually, I know in Maryland, you have to go to court at some point. Not in Virginia. You do have to, I don't know Maryland law, but what I've heard is. I'm not arguing Maryland. In Virginia, the Virginia Supreme Court last year held that if you have an investor, which is what happened here, who buys the house at a foreclosure, the sale is final when the hammer falls. And even if there was a defect in the sale, the borrower cannot upset that sale. That is the Ramos case, and it's also in the Squire case, which we cited in this case, not for that purpose. My question was going to lead to something, but it's not worth it. Let's stick with this case. This is a breach of contract case under Virginia law. Let's assume, for the moment, that there was a breach of the contract. Did you plead causation? Yes, sir, Your Honor. And what was that causation then? The causation is that the foreclosure took place without compliance with a precondition for foreclosure, and as a result of that foreclosure, that client's lost over $89,000 in equity. But your client, I mean, granted, the notice included an extra month's sum in it, but your clients did nothing, never offered to pay, didn't say, we will, so where's the causation? Well, that gets to the essential issue in this case, which is whether or not a borrower has to allege, or has to be, the facts have to be, that the borrower would have caught the payment up if given a proper notice. And there is a difference in the law on that. In the interesting, it's brilliant, in fact, that in this case, the district court held that as to a backdated notice, two days, without any allegation... I don't understand that. You know, you keep talking about backdated. The evidence is it was dated May 4. There's nothing to indicate it was backdated. It was mailed, presumably, on May 4. You refer to something at the top of the page, and I think you're just misreading it. That's correct. I'm not suggesting that... Okay, so they send it out, and the document says once it's mailed on May 4, that is the notice. Now, the problem is once you're in default, and that occurred in March, once you're in default again, you're in default, and every mortgage company can demand that you bring the thing current in order to get rid of the default. You don't get new letters every month. You're fighting about this eight or ten months later, and the court says, okay, you can redeem this, but you're going to have to bring the whole mortgage current. That's exactly what the document, their notice said. Their notice said you have 30 days, and if you pay after June 1, you're going to owe that one, too, to bring it current. Your Honor, the notice did not say you have to pay after June 1. In fact, it says, it's on page 91 of the appendix, it says if you make any payment after the date of this notice, it may be applied to the loan, but unless you pay, unless you cue according to what is stated above, the proceedings will proceed, and what was stated above... It gives a deadline. It gives you the 30-day deadline, and it said that June, at June 1, you'll have another payment to do that you'll have to pay, but people aren't nonsensical. They know they owe the money each month. They were in default on March, they were in default on April, default on May, and if they pay in June, they're going to owe the June one. Your Honor... You don't have to send a new default letter, a new acceleration letter with every month. What Your Honor has stated are the facts in the Matanik case, and some of the cases cited by the appellate, that is not what this notice said. What this notice said, in no uncertain terms, that during the first 27 days of the 30-day cure notice, cure period, that you could not, you had to overpay the mortgage if you brought it current during the month of May. This notice said on May the 4th, if you paid it anywhere up until May 31, and brought the loan current, according to this notice, they could go forward to foreclose. And that is the difference between this case, and the Matanik case, and these other cases that talk about the next month's notice. There is no statement in this notice that says a correct amount that was necessary to in the first 27 days of the 30-day cure notice. And when I was talking about what happened in the district court, I didn't say that to suggest that this was, it turned out to be a backdated notice. As Your Honor correctly stated, it is not a backdated case. But at the time when that was an issue... Let me go back. I don't know how you're reading this notice. It says, you pay on or before June 3rd, as follows, $14,000, and then they say, which includes the June 1st installment. Yes, sir. Now, obviously, if you pay before June 1st, you don't owe the June 1st installment. But you will owe it on June 1st. I don't know any reasonable person reading that recognizes that the $14,000 includes the June 1st. Now, if they pay it on May 15th, they can subtract the June 1st. It doesn't, Your Honor, on page 91 of the Joint Appendix, it says, payments applied to your loan after the date of this notice will not delay any proceedings on the part of PNC Mortgage unless the action required to cure this default as outlined above have been performed. Now, what says performed... I understand. I'm trying to look at the notice. I'm trying to look at the notice and a common sense reading of it. And the notice says, basically, you're in default and you have until June 3rd to bring it forth or it's going to be accelerated. And then they say, if you pay, and they give you a number, and then they say, which includes the 6-1-2010 installment. What's somebody supposed to interpret that that $14,000 includes, what was the monthly payment? 6-1-20... I had to figure it out somewhere, but anyway, if they paid it early, they wouldn't have to pay the June 1st until they get to June 1st. But at that point, they're in default, and they don't need to get a new letter for every payment. They have to get one correct letter. But this notice doesn't say a thing in the world of paying three months or three-fourths of this $14,000. It says you must pay in certified funds $14,770.18. What's the next sentence? Part of the same sentence, which includes the 6-1-2010 installment. But so, in effect, they tell the borrower, you have to pay ahead. You're behind. That is not an illogical... I read it that way. If I got that notice on March, on May 6th, and I sent them a check, I wouldn't pay them the June payment at that point. In fact, it says, which includes the June payment, but the June payment's not due yet. We ought to... It is undeniable that the borrower was wearing a default, and here's a lender telling them... In your complaint, they didn't offer to pay it or redeem it or bring it current. As a matter of fact, apparently, they couldn't. They didn't have the wherewithal. I don't question that. But the point I'm making is that the notice does not say you can pay three-fourths of this. It gives a specific amount. It does say it includes the next month, and it goes on to say on the next page that if you don't pay according to what we say above, which is the $14,000 figure, then we can accept it and go forward. And the reasonable interpretation of that, I submit, is that because you're in default, you have to pay ahead. That is not unusual out in the world. For example, with landlords and tenants, you've got to pay ahead because you got behind. But the important thing here is that the note and the deed of trust say these are the circumstances, these are the preconditions under which you can take the very valuable equity in my home. And they have to meet that. Now, there is certainly some cases that say you look at whether or not they could have caught it up, whether or not they would have caught it up, but the Virginia Supreme Court seems to have gone the other way. Can I ask you this, just to sort of tease it out a bit? Let's imagine that the notice had read the way you say it should have read, which is to not include in that $14,770.18 the June payment. Okay? So it just takes it up to May 31st. And then your clients walk in with a check on June 2nd, a certified check, that doesn't include the June payment. Would the lender be obliged to accept that check as a cure? Or are they still in default on June 2nd if they only bring payments through May? There's another provision in the deed of trust that says that if you owe more than is actually paid, the lender has a choice to accept it or reject it. So the answer is no. Your answer is yes, they could reject it. They could reject it under another provision of the deed of trust. But then wouldn't that harm your clients more than the way it's worded here? Imagine a homeowner, a mortgagee, you know, hustling for a couple of weeks to raise the And the lender says, sorry, you're not, even if I accept this check, you won't be carried. Well, you've made a strong argument in favor of the Matnick case, which says you can put in the notice if you pay after the first, you have to pay the extra amount. That's not this case. So you want to tweak the language? I see my time is up, but I will come back to that. I would like to answer it. You can answer it if you want. Okay. Why don't we talk to you when you come back? Okay. Thank you. All right. Mr. Pantagopoulos. Good morning, Your Honors, Konstantinos Pantagopoulos for the Appley PNC Bank. One of the principal cases that appellant tries to rely on is the Squire case in Virginia, Virginia Supreme Court case. And that case clearly says that the elements of a breach of contract action are one, a legally enforceable obligation, two, a breach, and three, injury or damage caused by the breach. And what the appellant is trying to do here is just completely remove the causation element. I believe, Judge Floyd, you asked a question relating to that. And I do believe that the notice complies here, but I think it's important to look at the elements of a breach of contract action, because I think what the appellant is trying to do here is take... I don't understand, though. You know, Pierre is somebody who didn't pay in March, didn't pay in April, didn't pay in May. They're given 30 days from the notice to June 3rd to complete payment. And if they had gone in with the payment just through March 31, they would, again, still be in default. So they say if you pay, it includes $14,000, which includes the June 1 installment. They make that explicit to make it clear. And why do you suppose that's a breach? It seems to me it's turning the thing upside down. The breach was the failure to pay. I agree. I agree with you, Your Honor. There is no breach here. But even giving them the benefit of the doubt, there's no claim here. But you're absolutely correct that the notice is clear that says, okay, here's what you need to do to cure, and that includes the June 1 payment. And it also says at the end, if you have any questions, please call our collection center at, and gives the telephone number, the 800 number to call. So if there's any confusion as to what's owed, hey, if I pay on May 31, what do I need to pay, or is it true that I need to pay X, the borrower could have done that. It's right there. There's nothing ambiguous. There's nothing here that an ordinary person couldn't understand. It's a very clear notice. We don't believe there's a breach at all. We believe that this notice complies. And there are several, and I believe that the weight of authority is behind us as well. There are several cases, the Matanik case, other cases that go exactly this way. And what Appellant is trying to do is just really take some specific language and some tweaks and argue something that's not there. He's trying to create an argument that's not there. So, Your Honor, we agree there is no breach here. But even if there were a breach, the one thing that the Plaintiff has not alleged, the Appellant has not alleged, is that, wait, we could have paid that lesser amount. They don't even say that. And all these other cases that they try to rely on indicate that, well, the Plaintiff in that case could have paid the amount. In Harris, the notice amount was overstated because in that case, the Plaintiff alleged that an October payment had been made. So there's a dispute as to what was owed. Number one. Number two, they allege that they had the money to bring it current. In Squire, I believe it's on page 59 of the case, the Plaintiff alleges that they had $8,000 put aside and could have brought the mortgage current. There's no such allegation here, and I believe that Appellant's counsel just admitted that there's no question that they couldn't bring it current. So they're trying to take a breach of contract action and turn it into a lottery action because they think that this notice didn't really comply somehow, and it is clear. Here's what you pay. It includes June 1. If you have any questions, call us. So if they wanted to pay on May 10, Judge Nehemiah, I believe you're right, that they knew that they didn't have to make the June payment if they pay early, and if they had any questions about that, they could have called. There's simply nothing here to support a breach of contract action. I take it this has really taken us far afield, I guess, and I apologize in advance, but Virginia has non-judicial foreclosure proceedings, is that right? Virginia has a non-judicial foreclosure proceeding. No court involved at any point. There's no court involved in any point except that, and you know, Mr. McLaughlin and I have been involved in several cases together, is that as soon as the notice goes out, if a borrower believes that notice is inappropriate, they go to court and they file a claim, and if there's any substantial question of law, the foreclosure stops. You say they go to court and file a... They file an affirmative claim to stop the foreclosure, look, they filed this breach of contract action. Is it still called Request for Judgment in Virginia? No, it's now complaint, they've merged equity and law, so we've... Really? Yeah. But not fully? Not completely fully, but it's all one action. So would it be raised due to COTA if there had been a judicial proceeding in advance of this breach of contract action? The only... The only thing the breach of contract action would have done, it would have determined whether or not the foreclosure notice was appropriate, and then foreclosure would have proceeded afterwards, yes. But typically, you know, Mr. McLaughlin is correct that in the typical foreclosure it is... In Virginia, it is completely non-judicial. We send a notice, we have a sale, and then at the end, we file with the court an accounting, so to speak. The debt was $300,000, we collected $200,000, trustee's fees were $5,000, we applied $195,000 to the debt. Thank you, that's it, and it's over with. So there's no deficiency judgment under that, typically? Well, typically, in Virginia, you can go after the deficiency, but what that filing with the Chancery Court does is it establishes what was paid on the note, on the mortgage, as of a particular date. So it is a non-judicial proceeding in Virginia that plaintiffs turn into judicial proceedings all the time. You look at all these cases that are cited, you know, they did have an opportunity, they got the notice, they could have filed something and said, wait, this is wrong beforehand. They didn't do that, and the foreclosure proceeded. So the claim here is for the proceeds of the sale minus the expenses, is that right? I think the claim here is for the loss of equity in the house, that the house was supposedly worth more. But it didn't sell for that. No, it did not. And we never got to that point below, but in Virginia, there's very good case law that the price of foreclosure is the value of the house at the time. And so I don't think they really made out a claim for damages, that's not the issue before us today, but I just... Did you remove on diversity? We did. No, we... Yes, we did. We removed on diversity. So there's even a question about the $75,000 minimum amount in controversy here. Well, I'm not... Again, I'm taking this far afield. Yeah, I'm not sure about that because you look at the value of the house and the entire value of the loan and the amount that's in dispute, that's clearly, you know, because the loan was accelerated at that point in time, you know, I believe there's clearly a... You know, we're clearly above that jurisdictional limit, at least as what's in dispute as to what they're claiming. But, you know, I believe the court was dead on, relied on cases that were dead on and did nothing that was inconsistent with Virginia law. Everything complied with Virginia law and, you know, again, even if the court decides to accept that the notice was somehow deficient, there is a provision in Virginia foreclosure law that indicates that you only have to substantially comply. So even if there's some theoretical deficiency... I understand why you give up on that. I'm not giving up on that. I'm giving you multiple... Your arguments sound like you're very, very defensive. It seems to me the acceleration is not effective. The acceleration is not effective for 30 days. And on... So that when the acceleration becomes effective, he would have owed $14,000. I agree. And the notice made clear that that includes the last payment that falls within the 30 days. Now, if he came in in May 31 and paid the $14,000, he'd be all right. But if he came in and paid the shorter amount, the question is, would they wait until the third and what happens? I guess he's cured by that and he's brought it to date as long as he pays the next day, June 1st, he pays that installment. But there's no allegation that he paid that installment. So for the 30 days, under the facts of this case, he remained in default. That is correct. And at the end of the 30 days, he owed $14,000. That is correct. And Your Honor, just to be clear, I'm not... You're thinking even if there is a breach, well, I don't know why you take that posture. Well, only because as a lawyer, I'm trying to belt, suspender and staple the thing. I am in addition too. All right. Anything further? No, Your Honor. Apparently, Judge Jackson has gone the other way from these other cases. Are you aware of that case? Well, which case is that? Simon. Well, Your Honor, when you look at these cases and when you look at the Virginia Supreme Court case, I don't... I think that it's clear here that in this particular case, it goes with the weight of authority and that I believe, if I remember correctly, in the Simon case, that there was an allegation that they could have cured. And so here, there's no such allegation that they could have cured at all. I mean, this one, I... Better allegation is they didn't cure. They didn't cure. So the 30 days did run. And at the end of the 30 days, they owed $14,000. That is correct. Yes. Okay. Thank you. Thank you. Mr. McLaughlin, you have some rebuttal? I would like to begin by answering the question that I didn't answer because of time and money. I don't... I'm in no way suggesting tweaking language. I'm arguing that the lender is bound by the terms of the loan instrument which set forth preconditions to sale and they're very clear. The note says that you have to give notice of the overdue amount. That's not what they did. Actually, I thought the note said you had to give a note or the deed of trust, I'm not sure which, you had to give notice, a 30-day notice to accelerate, to accelerate all payment. That's correct. And they were giving the 30-day notice to accelerate and the 30-day notice didn't expire until June 3rd, which then implicates the June 1st installment also. But the language of the note says you have to notify that they have to pay the overdue amount by 30 days. There's no $14,000 overdue amount at the time this notice was sent. Secondly, the deed... Well, how do they satisfy the acceleration requirement? Isn't there an acceleration requirement in there? Yes, Your Honor. There's an acceleration requirement. In order to accelerate, you have to give a notice setting forth, you have to pay the overdue amount within 30 days. There was no $14,000 overdue amount. That's the only figure they gave. And it goes on in the notice to say, if you pay in effect, and I've cited it in my opening argument... Which it looks to me like they complied to the T. It says, lender shall give notice to the borrower prior to acceleration following breach of any covenant or agreement. Well, the breach occurred in March, so they did satisfy that. Yes, Your Honor. The notice shall specify the default, failure to pay, B, the action required to cure the default payment, a date not less than 30 days from the date of notice is given to the borrower by which the default must be cured. So they gave the date of June 3rd, which is not less than 30 days, by which it has to be cured. And that date is, they would have owed $14,000. That's how they cured it. They couldn't have given it for earlier time. Oh, I'm not arguing that. I'm saying that the amount is what is wrong. They're saying in this notice... Because in the 30 days acceleration notice, it says a date not less than 30 days notice is given to the borrower by which the default must be cured. And if you cure the default by June 3rd, you have to pay $14,000. But that's how it works. That's how it was earlier. It doesn't say it's silent or if you cured it on May 5th. Your Honor, it says in this notice. No, I'm talking about the acceleration clause. I'm reading the acceleration clause in the deed of trust. You've read it correctly, but the key is that they didn't meet was what is necessary to the default. It is not necessary to pay June's payment in May. My suggestion to you in the question was their notice was intended to accelerate. They could not foreclose until they accelerate. That's correct. And so in order to satisfy the acceleration, they have to give 30 days notice and specify as of the 30 days, the amount necessary to cure. Your Honor, this is what the note says about what they have to do to accelerate. I just read it. You read from the deed of trust. I'm reading from the note, which is says, is also clear that they violated the terms of the note, which sets forth what they have to do to accelerate, and this is what it says. If I'm in a default, the note holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, it goes on to say you can accelerate. They never said in this that if you pay the overdue amount the next 27 out of the 30 days, you only have to... Do you think they could have accelerated earlier than the 30 days? No, sir. But they have to... That note doesn't say 30 days, does it? No, sir. They had to wait... The deed of trust is the burden on the land, and in order to get the land back, they have to follow the deed of trust, securing the note. They're not getting the land back, they're taking someone's home, and they have to state an overdue amount in the notice, and they did not do that. And this is not the Matnick case where they say, if you don't pay by the end of this month, you'll have to pay more next month. They gave a figure that they told this borrower in no uncertain terms that if they paid within the 27 days, they had to overpay. And it says that on the next page. They say, if you pay any amounts after this notice, not after June 1, you must pay the amount set forth above, and that's the $14,000. And I'd like briefly to address Your Honor's statement during the after-lease argument, which you said the breach was the failure to pay. This is the argument that was made in the Matthews case under the Horton versus Horton case. The lender in that case said, look, the borrower's in default, they're in default, and therefore they can't come in and say, we are in default. The Virginia Supreme Court said, that is not the law. And the Squire case said, that is not the law. And the Squire case said, cited the Bayview case. What is not the law? That the lender is excused by reason of the borrower's default. I didn't suggest the lender's. I suggested that the default in this case was the failure to pay the March installment. Yeah, well, it- Is that right? Well, the borrower was in default, but the default, the question of breach in this case is whether or not the lender breached the contract because you cannot foreclose unless you've met the preconditions before you take someone's home. To answer my question, was the failure to pay the March installment the default in this case? Yes, sir. No question about it. Okay. All right. But the breach in this case that is relevant here, that is whether or not the lender breached the terms of taking someone's home. And the counsel for the appellee said the value of the home is what the foreclosure is. That is directly contradicted by the Squire case, which held, in that case, that Wedge alleged that the value of the home was greater than the foreclosure sale, and it was not a compliance. And Squire has been interpreted by the majority of cases as imposing a strict liability. Now, that is based on the language. He's correct that under the facts of Squire, there was an allegation that the borrower could have caught it up. But the language of that case cites the Bayview case and says, in that case, they said it by regular mail and not certified mail. The borrower never said in that case what the borrower would have done. And in this case below, analyzing the backdated cases, the court said you don't have to show you would have caught it up. Thank you for hearing that. All right. Thank you, Mr. McLaughlin. We'll adjourn court for the day.
judges: Paul V. Niemeyer, Henry F. Floyd, Andre M. Davis